FILED

2020 Dec-15  AM 10:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES HOUSER, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | |
| **v.** | ] | **2:20-cv-01661-ACA** |
| | ] | |
| **ALLSTATE INSURANCE COMPANY,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiffs James and Catherine Houser's motion to remand this case to the Circuit Court of Jefferson County, Alabama.  (Doc. 3).  The Housers contend that the court lacks diversity jurisdiction over this action because Defendant Allstate Insurance Company has not proved that more than $75,000 is in controversy.  (*Id.*).  Because the court finds that more than $75,000 is in controversy, the court **DENIES** the motion to remand.  The court also *sua sponte* **STRIKES** the complaint for being a shotgun pleading **ORDERS** the Housers to replead in conformity with the federal pleading standard, the Federal Rules of Civil Procedure, and the Eleventh Circuit's instructions about pleading a complaint, as set out below. The amended complaint is due **on or before December 29, 2020**.

1.  <u>Motion to Remand</u>

The Housers' complaint alleges that Mr. Houser was a named insured on an auto insurance policy issued by Allstate.  (Doc. 1-1 at 12 ¶ 5).  The policy provided uninsured motorist coverage.  (*Id.* at 33, 35–38).

In October 2018,[1] while Mr. Houser was driving a car in which Ms. Houser was a passenger, an unknown driver hit Mr. Houser's car and injured both of them. (Doc. 1-1 at 11 ¶ 2, 12 ¶ 6).  The complaint states that "Plaintiff"[2] suffered "serious injuries to the person," including injuries that were permanent and that caused "Plaintiff" to be "permanently unable to pursue many normal and usual activities." (*Id.* at 13 ¶ 8a–c).  "Plaintiff" spent and will continue to spend "large sums of money" on medical expenses to treat those injuries and has also suffered from lost wages. (*Id.* at 13 ¶ 8d–e).  Finally, "Plaintiff" suffered losses relating to the car "and other property." (*Id.* at 13 ¶ 8f).  Interrogatories submitted by the Housers indicate that Mr. Houser had $10,645 in medical bills and Ms. Houser had $11,563 in medical bills.  (Doc. 1-1 at 20–21, 40).

---

[1] The complaint states that the accident occurred on October 10, 2018 (doc. 1-1 at 11 ¶ 2), but documents submitted to the state court before removal indicate that the accident actually occurred on October 4, 2018 (*id.* at 20–21, 40–41).

[2] Although the complaint names both Mr. Houser and Ms. Houser as plaintiffs, it frequently refers to a singular "Plaintiff" without specifying which of the two it means.  (*See generally* Doc. 1-1 at 11–17).

Mr. Houser made a claim for underinsured motorist coverage under his Allstate policy, but Allstate failed to investigate or pay the claim. (Doc. 1-1 at 13 ¶ 6). After Allstate denied the claim, the Housers' attorney sent Allstate a demand letter seeking "$60,000 or policy limits, whichever is *less*" for Ms. Houser, and "$47,500, or whichever is *less*" for Mr. Houser. (*Id.* at 41) (emphases in original).

The Housers assert the following state law claims against Allstate: (1) uninsured/underinsured motorist claim ("Count One"); (2) breach of contract ("Count Two"); (3) bad faith refusal to pay the claim ("Count Three"); and (4) negligent refusal to settle the claim ("Count Four"). (Doc. 1-1 at 13–17). Each claim requests compensatory damages "and benefits" (*id.* at 14–17), and the complaint also broadly requests punitive damages, a request that apparently applies to every claim asserted (*id.* at 13).

After the Housers filed this action in the Circuit Court of Jefferson County, Allstate removed the action under 28 U.S.C. § 1441, asserting that this court has diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1). Under § 1332(a), the court has jurisdiction when every plaintiff is diverse from every defendant and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Here, the diversity of citizenship between the parties is not in dispute. (*See* Doc. 1 at 2; Doc. 1-1 at 9–10 ¶¶ 1–2; *see*

*generally* Doc. 3).  However, the parties do dispute whether more than $75,000 is in controversy.

Where the plaintiff's complaint makes an unspecified demand for damages—as it does here—the removing party bears the burden of establishing the court's jurisdiction over the case by a preponderance of the evidence.  *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).  "In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper.  In other cases, however, it may be facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum . . . ."  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (footnote, citation, and quotation marks omitted).  In determining whether the amount in controversy is satisfied, "courts may use their judicial experience and common sense."  *Id.* at 1062.

The court is convinced that the amount in controversy requirement is satisfied.  "Generally, when plaintiffs join in one lawsuit, the value of their claims may not be added together, or 'aggregated,' to satisfy the amount in controversy requirement for diversity jurisdiction."  *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 (11th Cir. 2001); *see also Snyder v. Harris*, 394 U.S. 332, 335 (1969) ("The traditional judicial interpretation under all of these statutes has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy

the jurisdictional amount requirement.").  The parties debate whether that general rule applies here, where both plaintiffs' claims arise out of the same insurance policy, based on the same accident, and are subject to the same policy limits.  (*See* Doc. 3 at 7–9; Doc. 5 at 7–9).  The court need not resolve that debate, however, because it is well settled that each plaintiff may aggregate his or her own claims against a single defendant.  *See Snyder*, 394 U.S. at 335 (stating that one of the two situations in which aggregation has been permitted is "in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant").  And here, each plaintiff has individually put more than $75,000 in controversy.

Both plaintiffs raise the same four claims, including a claim for bad faith denial of an insurance claim, seeking both compensatory and punitive damages.  (*See* Doc. 1-1 at 13–17).  Although Mr. Houser's medical bills appear to amount to $10,645 and Ms. Houser's medical bills amount to $11,563 (doc. 1-1 at 20–21, 40), punitive damages are available for claims of bad faith denial of an insurance claim, *see, e.g.*, *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 978 (Ala. 1998); *Aetna Life Ins. Co. v. Lavoie*, 505 So. 2d 1050, 1051, 1053–54 (Ala. 1987).  And in *Aetna Life Insurance Company*, the Alabama Supreme Court approved punitive damages of $3 million after the insurance company denied a health insurance claim amounting to $3,028.25.  *See Aetna Life Ins. Co.*, 505 So. 2d at 1051, 1053–54.  In short, the court's "judicial experience and common sense" convinces the court that

even without aggregating the plaintiffs' claims, each plaintiff's claims against Allstate place more than $75,000 in controversy, even without adding the other plaintiff's amount in controversy. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d at 1062. Accordingly, the court **DENIES** the motion to remand.

2. <u>Shotgun Pleading</u>

Because this case will remain before this court, the court has reviewed the complaint for whether it complies with federal pleading standards. It does not; it is, instead, a shotgun pleading. Shotgun pleadings fall into "four rough types of categories." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* The third is one that does "not separat[e] into a different count each cause of action or claim for relief." *Id.* And the fourth type of complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The Eleventh Circuit has repeatedly and vehemently condemned shotgun pleadings. *See Estate of David Bass v. Regions Bank*, 947 F.3d 1352, 1356 n.3 (11th

Cir. 2020) ("As of 2008, [the Eleventh Circuit] had explicitly condemned shotgun pleadings upward of fifty times.") (quotation marks omitted); *see also Weiland*, 792 F.3d at 1321 (stating that as of 2015, the Eleventh Circuit had published more than sixty opinions about shotgun pleadings).  The Court strongly encourages "a district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading." *Estate of David Bass*, 947 F.3d at 1358.

The complaint here is a shotgun pleading of the first type.  Every count incorporates by reference all paragraphs that came before it.  *See Weiland*, 792 F.3d at 1323.  And although it does not fit neatly into the other three categories set out in the *Weiland* decision, it has a problem related to the fourth type: it discusses both plaintiffs as if they were one person, without differentiating between them.  *See id.* (concluding that a claim that does not differentiate between multiple defendants is a shotgun pleading).  Accordingly, the court **STRIKES** the complaint and **ORDERS** the Housers to replead in conformity with the federal pleading standard, the Federal Rules of Civil Procedure, and the Eleventh Circuit's instructions about pleading a complaint.  *See, e.g.*, *id.* at 1320; *see also* Fed. R. Civ. P. 8, 10.  The amended complaint is due **on or before December 29, 2020**.

**DONE** and **ORDERED** this December 15, 2020.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE